# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Nos. 15-3751, 15-3799, 15-3822, 15-3823, 15-3831,
15-3850, 15-3853, 15-3858, 15-3885, 15-3887

In re: ENVIRONMENTAL PROTECTION AGENCY
AND DEPARTMENT OF DEFENSE,
FINAL RULE: CLEAN WATER RULE:
DEFINITION OF "WATERS OF THE UNITED STATES,"
80 Fed. Reg. 37,054, Published on June 29, 2015
(MCP No. 135)

Petitions for Review of Final Rule of the
United States Environmental Protection Agency and the
United States Army Corps of Engineers

## MOTION OF PUGET SOUNDKEEPER ALLIANCE AND SIERRA CLUB TO INTERVENE IN SUPPORT OF RESPONDENTS

JENNIFER C. CHAVEZ
Earthjustice
1625 Massachusetts Ave., NW, Ste. 702
Washington, D.C. 20036-2243
(202) 667-4500 | Phone
(202) 667-2356 | Fax
jchavez@earthjustice.org

JANETTE K. BRIMMER
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
jbrimmer@earthjustice.org

TAMARA ZAKIM
50 California Street, Suite 500
San Francisco, CA 94111-4608
(415) 217-2000 | Phone
(415) 217-2040 | Fax
tzakim@earthjustice.org

*Counsel for Puget Soundkeeper Alliance
and Sierra Club*

DATED: August 19, 2015

## MOTION OF PUGET SOUNDKEEPER ALLIANCE AND SIERRA CLUB TO INTERVENE IN SUPPORT OF RESPONDENTS

Puget Soundkeeper Alliance and the Sierra Club (collectively, "Water Protection Groups") hereby move to intervene in support of Respondents in the above-listed consolidated petitions for review pursuant to Federal Rule of Appellate Procedure 15(d) and Federal of Civil Procedure 24(b) . These petitions challenge a Clean Water Act final rule ("Rule" or "Final Rule") issued jointly by the U.S. Environmental Protection Agency ("EPA") and the U.S. Army Corps of Engineers ("Corps") (collectively, "agencies") entitled "Clean Water Rule: Definition of 'Waters of the United States.'" *See* 80 Fed. Reg. 37,054 (June 29, 2015). The Rule revises the agencies' regulatory interpretation of the scope of their jurisdiction under the Clean Water Act to regulate waters across the country and, in so doing, makes significant determinations about what waters qualify for protections from pollution and destruction under federal law. 80 Fed. Reg. 37,054/1-2.

The Water Protection Groups are long-standing clean water advocates that participated in the public process culminating in the Final Rule, submitting comments on the proposed rule. The Water Protection Groups are also petitioners in Puget Soundkeeper Alliance v. EPA, Case No. 15-3839 (filed Aug. 4, 2015), originally filed in the Ninth Circuit and now consolidated before this Court in the current action.

1

As explained herein, the Water Protection Groups have a legal interest in the foregoing action that meets the requirements for intervention in support of Respondents in this Court, and are so situated that the disposition of this action may, as a practical matter, impair their ability to protect that interest. Accordingly, the Water Protection Groups are entitled to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, the Water Protection Groups seek permissive intervention in this action pursuant to Federal Rule of Civil Procedure 24(b)(2).

Counsel for the Water Protection Groups have queried counsel for all other petitioners regarding their position on this Motion to Intervene. As of the time of this filing, counsel for six of the ten petitioners (Case Nos. 15-3751, 15-3799, 15-3831, 15-3850, 15-3858, 15-3885) state that they take no position on this motion. No response has been received from counsel for the remaining four petitioners (Case Nos. 15-3822, 15-3823, 15-3853, and 15-3887). In addition, the Department of Justice states that the agencies take no position on this motion.

## BACKGROUND

The Clean Water Act ("CWA" or "Act") is the primary federal law governing water pollution in the United States. Its purpose is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters" by preventing pollution discharges into waters, providing assistance to publicly owned

treatment works for the improvement of wastewater treatment, and maintaining the integrity of wetlands. 33 U.S.C. § 1251(a). The cornerstone of the Act prohibits the "discharge of any pollutant by any person" except in compliance with the Act's permitting requirements and other pollution prevention programs. *Id.* § 1311(a).

Pollutant discharges into U.S. waters remain a serious issue, notwithstanding water quality improvements in many U.S. waters since the Act's passage in 1972. Due to discharges from industrial facilities, sewage treatment plants, construction sites, municipal storm sewers, and other sources, many U.S. waters remain polluted and are harmful to public health and the ecosystems and wildlife that rely on those waters. According to EPA, over fifty percent of U.S. streams and rivers are currently in "poor" condition, and unfit for swimming, fishing, and other activities. *See* EPA, *National Summary of Assessed Waters Report Reporting Year 2012*, http://www.epa.gov/waters/ir/ (last updated Aug. 19) (search results for "Assessed Waters Report" for most recent year (2012), all states).

The scope of the Clean Water Act's jurisdiction determines which waters are protected by CWA programs, and which are not.[1] The Act itself provides that its

---

[1] In the agencies' words, the Rule is intended to "interpret[] the scope of 'waters of the United States' in the CWA based on … relevant scientific literature, the agencies' technical expertise, and the objectives and requirements" of the Act, with a desire to provide "greater clarity, certainty, and predictability for the regulated public and the regulators." 79 Fed. Reg. 22,188, 22,196/2, 22,189/3, 22,217/3 (Apr. 21, 2014).

-

jurisdiction extends to "navigable waters," which are in turn defined as "the waters of the United States, including the territorial seas." *See* 33 U.S.C. §§ 1251, 1321, 1342, 1344; *see also id*. § 1362(7). The Act's legislative history demonstrates that Congress intended the term "waters of the United States" to be applied broadly, with members expressing their intent that their use of the word "navigable" *not* be read to limit the application of the Act in any way. *See* Committee on Public Works, A Legislative History of the Water Pollution Control Act Amendments of 1972, at 178, 250-51, 327, 818, 1495 (1973).

The Final Rule is the first revision to regulations defining "navigable waters" and "waters of the United States" in more than thirty years. 33 U.S.C. §§ 1251-388; 80 Fed. Reg. at 37,073/1-74/1. The Rule contains various provisions that, for the first time, define certain key terms such as "tributary" and "adjacent," for purposes of clarifying what waters are provided protection under the CWA. 80 Fed. Reg. at 37,075/3-86/3. The Rule also contains provisions categorically deeming certain waters "not jurisdictional," or not regulated under the Act, including "waste treatment systems designed consistent with the requirements of the CWA," "prior converted cropland" and water transfers. *Id*. at 37,073/2.

The Rule further defines certain waters as jurisdictional-by-rule, which provides that once a determination is made that a water falls into a jurisdictional-by-rule category, no further case-specific analysis is required for protection of that

4

water. Tributaries of primary waters, for example, are now waters of the United States, *per se*, under the Rule's revised jurisdictional-by-rule provision. *Id.* at 37,075/3-80/1. Many hundreds of thousands of miles of degraded streams, rivers, and other tributaries may qualify for categorical protection under the CWA under this revised provision.

    The Water Protection Groups are two non-profit corporations with a long record of advocacy focused on improving the quality of U.S. water bodies adversely impacted by pollutant discharges. Puget Soundkeeper Alliance is a nonprofit corporation organized and existing under the laws of Washington, with its headquarters in Seattle. Its mission is to protect and preserve the waters of Puget Sound. Sierra Club is a nonprofit corporation organized and existing under the laws of California, with its headquarters in San Francisco. It is a national organization dedicated to protecting public health and the environment, including clean water. Both groups accomplish their work, in part, by pursuing enforcement of the CWA's permitting requirements and, necessarily, the Act's jurisdiction.

    The Water Protection Groups submitted timely public comments on the proposed rule before the Rule was finalized and published on June 29, 2015. In their comments, the Water Protection Groups articulated their support for several of the Rule's specific provisions, including the jurisdictional-by-rule provisions, while highlighting that certain provisions exceed the Agencies' CWA authority by

excluding from protection certain waters that fall within the Act's jurisdictional scope as established by the terms of the Act and relevant case law. *See* Comments of Waterkeeper Alliance, *et al.* (Nov. 14, 2014) (including Puget Soundkeeper Alliance), EPA-HQ-OW-2011-0880-16413[2]; Comments of Natural Res. Def. Council, *et al.* (including Sierra Club), EPA,HQ-OW-2011-0880-16674 (Nov. 14, 2014).[3] Many of the state and industry petitioners in this consolidated action have made clear, through administrative public comments, recent parallel filings in various district courts, and or other public statements, their opposition to both the entire Rule, and the common-sense provisions supported by the Water Protection Groups.

    Following the Rule's publication, fourteen petitions seeking review of the Final Rule were filed in various circuit courts between July 13 and July 24, 2015. The Water Protection Groups filed their own petition for review of the Rule in the Ninth Circuit on July 22, 2015. *See* Petition for Review, Puget Soundkeeper Alliance v. EPA, No. 15-72227 (9th Cir. Filed July 22, 2015), Dkt. 1-1. All fourteen petitions have since been consolidated in this Court. No further pre-trial

---

[2] *Available at* http://www.regulations.gov/contentStreamer?documentId=EPA-HQ-OW-2011-0880-16413&attachmentNumber=1&disposition=attachment&contentType=pdf.

[3] *Available at* http://www.regulations.gov/contentStreamer?documentId=EPA-HQ-OW-2011-0880-16674&attachmentNumber=2&disposition=attachment&contentType=pdf.

proceedings or briefings have occurred in the action.

## ARGUMENT

The Water Protection Groups have a right to intervene in these consolidated petitions under Federal Rule of Appellate Procedure 15(d) for purposes of supporting Respondents in defending certain portions of the Final Rule. Rule 15(d) expressly allows intervention in cases challenging administrative rulemaking such as this one. Because Rule 15(d) does not delineate the standards by which the appropriateness of intervention should be determined, the courts of appeals generally turn to the rules governing intervention in the district courts under Federal Rule of Civil Procedure 24 for guidance. *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517-18 (7th Cir. 2004); *see also Automobile Workers v. Scofield*, 382 U.S. 205, 217 n.10 (1965) (suggesting that "the policies underlying intervention" in the district courts under Civil Rule 24 may be "applicable in appellate courts").

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right, and, where intervention as a right is unavailable, a court may alternatively allow permissive intervention. Fed. R. Civ. P. 24(b). Under either standard, the Water Protection Groups' motion to intervene should be granted.

A.  **THE WATER PROTECTION GROUPS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

The Water Protection Groups are entitled to intervene in support of Respondents as a matter of right because they satisfy all the criteria necessary to

7

support such intervention, in accordance with Rule 24(a)(2). These criteria include "(1) that the application be timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest[s]." *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999).

**1.     This Motion To Intervene Is Timely Filed.**

A motion for intervention is timely under Federal Rule of Appellate Procedure 15(d) if filed within thirty days of the filing of petition for review. Fed. R. App. P. 15(d). The Water Protection Groups' motion is filed within thirty days of July 24, 2015, the date of the latest-filed petitions consolidated in this action. *See* Petition for Review, State of Ohio v. U.S. Army Corps of Engineers, No. 15-3799 (6th Cir. filed July 24, 2015). Dkt. 1-2; Petition for Review, Utility Water Act Group v. EPA, No. 15-60509 (5th Cir. filed July 24, 2015) (consolidated here as Case No. 15-3858, Dkt. 1-2). Accordingly, the Water Protection Groups' motion is timely for intervention in the consolidated action.

**2.     The Water Protection Groups Have A Legal Interest In This Action.**

The Water Protection Groups have a legal interest in this action sufficient for intervention as a matter of right. The requisite interest for intervention as a matter of right must be liberally construed for the benefit of a potential intervenor.

*See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997) (the Sixth Circuit has "opted for a rather expansive notion of the interest sufficient to invoke intervention of right") (citing *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991); *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)). The Water Protection Groups participated in the public process that accompanied the development of the Final Rule by submitting detailed comments to EPA and the Corps. Moreover, the Water Protection Groups have a long-standing record of clean water advocacy that directly relies on the Clean Water Act's permitting requirements and jurisdiction as key tools for effective pollution control, further highlighting their interest in the outcome of this action.

Both Puget Soundkeeper Alliance and Sierra Club are dedicated to protecting the environment and public health, with thousands of members who live, work, and recreate in and around our nation's waters. Puget Soundkeeper Alliance is focused on protecting and preserving the waters of Puget Sound, Washington, and it does so through efforts such as water quality monitoring and reporting, engagement with government agencies and businesses to regulate pollution discharges, and Clean Water Act enforcement litigation to control or halt pollution and other adverse impacts to waters.

Sierra Club protects treasured water bodies throughout the U.S. from pollution, development, and destruction using a variety of advocacy efforts,

including but not limited to Clean Water Act enforcement efforts. Local Sierra Club Chapters and Groups also run local Water Sentinels programs that train member volunteers to test their local water bodies for contamination and present the results to local regulatory officials, organize cleanups, or advocate to government agencies to help improve water quality. Both groups regularly provide public comments on Clean Water Act rulemakings and other regulatory actions by the agencies.

The Water Protection Groups were active participants in the public process that culminated in the Final Rule, filing detailed comments in support of some portions of the Rule and sharply critical of others. *See supra* nn.2-3. In support of their comments, the Water Protection Groups pointed to case law, agency research, and critiques and comments from the scientific community when submitting information for the record. The Water Protection Groups have since filed a petition seeking review of the Rule's specific provisions that fail to categorically protect certain waters, or fail to retain agency authority to protect certain waters on a case-specific basis.

In light of their involvement in the Rule's public process and their reliance on the Clean Water Act's protective regulatory scheme as a critical tool for clean water advocacy, the Water Protection Groups have the requisite "substantial legal interest in the case" required for intervention as a matter of right in support of

Respondents. Further, other circuit courts have deemed it "indisputable that a prospective intervenor's environmental concern is a legally protectable interest." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (internal quotation marks and citation omitted); *see also Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996).

### 3. The Water Protection Groups' Interests May Be Impaired Or Impeded By The Outcome in this Case.

An outcome in this case that invalidates the Final Rule in full or invalidates provisions of the Final Rule that the Water Protection Groups have supported in the public process for the Rule will directly affect and substantially impair the Water Protection Groups' interest. In supporting a motion to intervene, the burden of demonstrating "that impairment of [an applicant's] substantial legal interest is *possible* if intervention is denied … is *minimal*." *Michigan State AFL-CIO*, 103 F.3d at 1247 (citing *Purnell*, 925 F.2d at 948) (emphasis added). Though the multiple petitions for review in the current action give no indication of the scope of relief sought by individual petitioners, many of the petitioners in this consolidated action have, in recent parallel filings in various district courts, stated their opposition to the entire Rule and sought broad relief including vacatur of the Rule in its entirety.

Invalidation of provisions defining large categories of water bodies throughout the United States as jurisdictional-by-rule, including certain tributaries

11

and wetlands, could strip federal pollution protections from hundreds of thousands of miles of ecologically significant streams, rivers, and other water bodies and the ecosystems and human uses that they support. Consequently, these waters and the people that work, live, and recreate in and around these waters, including the Water Protection Groups' members, will be made vulnerable to the adverse impacts of unregulated pollution discharges, degraded water quality, or dredged and filled waters with little legal recourse. This outcome would clearly impair or impede the Water Protection Groups' interest in clean water advocacy and their members' interests in ensuring full protection of our nation's waters from pollution, degradation, and destruction, such that the Water Protection Groups meet the minimal threshold of impairment for intervention as a matter of right.

### 4. Existing Parties Do Not Adequately Represent The Water Protection Groups' Interests.

The Water Protection Groups should be permitted to intervene as a matter of right in support of respondents because their interests in defending certain, protective provisions of the Final Rule are not represented adequately by existing parties. The Sixth Circuit has held that proposed intervenors need only show that their interest in the action *may be* inadequately represented by the existing parties to the suit, and that the burden of making that showing should be treated as "minimal." *Id.* The Water Protection Groups make this minimal showing.

From the face of the Rule, the agencies and the Water Protection Groups differ in their view regarding the proper scope of the agencies' jurisdiction under the CWA. The Water Protection Groups support EPA and the Corps' scientifically-supported, common sense conclusion that certain waters, such as "tributaries to primary waters," are categorically jurisdictional. But, as the Water Protection Groups explained in their comments, they disagree with the agencies' decision to exclude certain waters from their regulatory interpretation of the Act's scope of jurisdiction. *See, e.g.*, Comments of Waterkeeper Alliance, *et al.* at 32-38, 59-72, *supra* n.2. Accordingly, the Water Protection Groups argue that the agencies' failure to either categorically protect certain waters, or retain their authority to protect them on a case-specific basis, is unlawful.

In short, the Water Protection Groups take a more expansive view of the Clean Water Act's jurisdiction, consistent with Congressional intent, than respondents EPA and the Corps. Thus, it must be expected that respondents will not make the same defensive arguments regarding CWA jurisdiction in response to challenges to protective provisions of the Final Rule that the Water Protection Groups would. *See In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (granting intervention, and noting that "although the interests of Sierra Club and [the government] may converge" with respect to certain legal points, "they may [also] diverge" with respect to others).

The fact that respondent agencies EPA and the Corps share an interest with Water Protection Groups in defending the Rule does not mean their approach to litigation will be the same as the Water Protection Groups. For purposes of the Water Protection Groups' intervention in support of respondents, it is "enough to show that the existing part[ies] who purport[] to seek the same outcome will not make all of the prospective intervenor[s'] arguments." *Michigan State AFL-CIO*, 103 F.3d at 1247. Indeed, the Water Protection Groups are also petitioners in this consolidated action, further evincing respondent agencies' inability to adequately represent the Water Protection Groups' interests. Courts have regularly recognized the divergent interests of a governmental agency and private intervenors. *See, e.g.*, *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("As [the Tenth Circuit] has persuasively explained, the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'") (quoting *WildEarth Guardians v. U.S. Forest. Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

**B.     ALTERNATIVELY, WATER PROTECTION GROUPS SHOULD BE PERMITTED TO INTERVENE PURSUANT TO FED. R. CIV. P. 24(B)(2).**

Should the Court determine that the Water Protection Groups have not met the standards for intervention as of right, the Water Protection Groups respectfully

14

request that the Court permit it to intervene in the action pursuant to Rule 24(b)(2) in the alternative. Rule 24 permits intervention when an applicant's "claim or defense … shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). A court may grant permissive intervention if "the motion for intervention is timely and there is at least one common question of law or fact" and the balancing of undue delay, prejudice to the original parties, and any other relevant factors favors intervention. *Michigan State AFL-CIO*, 103 F.3d at 1248; *see also McDonald v. E.J. Lavino Co*., 430 F.2d 1065, 1074 (5th Cir. 1970) (permissive intervention should be granted "where no one would be hurt and greater justice would be attained").

Each of these factors favors permissive intervention for the Water Protection Groups. The Water Protection Groups are already part of the consolidated action and common questions of law underlie the proper scope of the Final Rule under the Clean Water Act under each of the petitions that have been consolidated here. There is no undue delay or prejudice to any of the parties in any of the consolidated cases as this matter has just gotten underway and briefing has not yet been scheduled, much less commenced.

Moreover, the Water Protection Groups bring a particular perspective to the consolidated cases, including those in which the Water Protection Groups seek to intervene, that will be helpful to the Court in ensuring that all arguments and

record support for those arguments relating to the Final Rule are before the Court and fully-briefed. At a minimum, the factors to be considered in allowing permissive intervention support allowing intervention as requested by the Water Protection Groups.

## CONCLUSION

For the foregoing reasons, the Water Protection Groups respectfully request that they be granted leave to intervene in support of respondents in this action as a matter of right. Alternatively, the Water Protection Groups seek leave to intervene pursuant to the Court's power to grant permissive intervention.

DATED: August 19, 2015                Respectfully submitted,

/s/ JENNIFER C. CHAVEZ
JENNIFER C. CHAVEZ
Earthjustice
1625 Massachusetts Ave., NW, Ste. 702
Washington, D.C. 20036-2243
(202) 667-4500 | Phone
(202) 667-2356 | Fax
jchavez@earthjustice.org

JANETTE K. BRIMMER
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
jbrimmer@earthjustice.org

TAMARA ZAKIM
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111-4608
(415) 217-2000 | Phone
(415) 217-2040 | Fax
tzakim@earthjustice.org

*Attorneys for Puget Soundkeeper Alliance and Sierra Club*

## CERTIFICATE OF SERVICE

  I hereby certify on this 19th day of August, 2015, that I have served the foregoing **Motion of Puget Soundkeeper Alliance and Sierra Club to Intervene in Support of Respondents** on all registered counsel through the court's electronic filing system (ECF).

               <u>/s/ Jennifer C. Chavez</u>
               Jennifer C. Chavez