**Nos. 15-3799, 15-3822, 15-3853, 15-3887**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| STATE OF OHIO, *ET AL.*, <br>     Petitioners, <br>       v. <br> U.S. ARMY CORPS OF ENGINEERS, *ET AL.*, <br>     Respondents. | : <br> : <br> : <br> : <br> : <br> : <br> : | No. 15-3799 |
| STATE OF OKLAHOMA, <br>     Petitioner, <br>       v. <br> U.S. E.P.A., *ET AL.*, <br>     Respondents. | : <br> : <br> : <br> : <br> : <br> : <br> : | No. 15-3822 |
| STATE OF TEXAS, *ET AL.*, <br>     Petitioners, <br>       v. <br> U.S. E.P.A., *ET AL.*, <br>     Respondents. | : <br> : <br> : <br> : <br> : <br> : <br> : | No. 15-3853 |
| STATE OF GEORGIA, *ET AL.*, <br>     Petitioners, <br>       v. <br> U.S. E.P.A., *ET AL.*, <br>     Respondents. | : <br> : <br> : <br> : <br> : <br> : <br> : | No. 15-3887 |

**STATE PETITIONERS' REPLY IN SUPPORT OF**
**MOTION FOR A STAY PENDING REVIEW**

This Court clearly has the authority to stay the WOTUS Rule while it considers the motion to dismiss for lack of jurisdiction, and it should do so because the Rule is unlawful and imposes irreparable harm on the States every day.

## ARGUMENT

### I.    This Court Has The Authority To Stay The Rule Now

The Agencies' request that this Court delay granting a stay until after a final decision on the jurisdictional issue (Opp. 1) is contrary to what the Agencies argued to other courts and is wrong as a matter of law.  In persuading the Southern District of Georgia to decline on jurisdictional grounds to rule on the merits of the preliminary injunction sought by eleven Petitioner States, the Agencies represented that if those States sought a stay from this Court, "Federal Defendants [would] not dispute the Sixth Circuit's authority to stay the Rule."  Doc. 65 at 12, No. 2:15-cv-00079 (S.D. Ga.).  The Agencies, which also fought to limit to only thirteen States the preliminary injunction issued by the District of North Dakota, should not be permitted to continue delaying the States' right to preliminary relief through such contradictory representations.

This Court has the authority to determine its own jurisdiction, and, "[u]ntil its judgment declining jurisdiction should be announced, it [has] authority, from the necessity of the case, to make orders to preserve the existing conditions." *United States v. Shipp*, 203 U.S. 563, 573 (1906); *see United States v. United Mine*

*Workers*, 330 U.S. 258, 291 (1947); *Am. Fed. of Musicians v. Stein*, 213 F.2d 679, 689 (6th Cir. 1954).  This Court should exercise that authority by entering a stay of the WOTUS Rule before full briefing and decision on jurisdiction concludes.[1]

## II.    The States Are Likely To Succeed On The Merits

### A.    The WOTUS Rule Violates The Notice-And-Comment Mandate

The WOTUS Rule defines "adjacent" and case-by-case waters based on five distance-based approaches, none of which was arguably presaged in the proposed rule.  Stay Mot. 7-10.  The Agencies thus failed to inform the public of "the range of alternatives being considered with reasonable specificity," in clear violation of the APA's notice-and-comment mandate.  *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 549 (D.C. Cir. 1983).

The Agencies' contrary arguments are unavailing.  They note that they informed the public that they would consider adopting unspecified "geographical limits" for adjacent waters.  Opp. 5-6.  On that basis, they contend that they are permitted to adopt *absolutely any distance-based approaches to all the waters in the United States*.  Unsurprisingly, the Agencies are unable to cite any case, from any jurisdiction, upholding a comparable approach to notice-and-comment

---

[1] The Agencies cite to *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) (Opp. 1), but that case did not involve a stay pending determination of jurisdiction.  Rather, it simply held that courts cannot render a *final* merits decision absent a finding that the plaintiff has standing.

rulemaking. *See Small Refiner*, 705 F.2d at 513; *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1082 (D.C. Cir. 2009).[2]

The Agencies also observe that there were over "one million submitted comments" on the Rule (Opp. 2), but have not identified a single comment addressing the specific distance-based approaches that the Agencies adopted. *See, e.g.*, Opp. Addendum RE003-05, RE014, RE0017, RE0027 (only discussing the merits of distance-based limitations in general).[3]

## B. The Rule Is Arbitrary And Capricious

In response to the Stay Motion's argument that the record does not justify the distance-based limits that the Agencies crafted, Stay Mot. 10-11, the Agencies admit that the Rule would be arbitrary and capricious if "the administrative record [failed to] support[] the bright-lines that the Agencies crafted." Opp. 8. Yet, the Agencies fail to point to even a single sentence in the record supporting the

---

[2] For case-by-case waters, the most the Agencies can muster is a reference to the "distance of hydrologic connection." Opp. 6. That does not begin to suggest the bright-line, distance-based limitations ultimately adopted in the final rule. 79 Fed. Reg. 22,211-15 (Apr. 21, 2014). The Agencies also assert that the States are not harmed by the geographical approach to case-by-case waters because the approach was narrower than in the proposal's limitless approach. Opp. 6. This misses the point. The limitations introduced in the final Rule were clearly an (unsuccessful) attempt by the Agencies to remedy the unlawfulness of the proposal's approach, and the States had a right under the APA to provide comment upon the legality and wisdom of the Agencies' attempted remedy before it became final.

[3] Even if some commenter had guessed one of the five specific approaches that the Agencies adopted, this would be of "little significance" because "the agency must itself provide notice of [its] proposal." *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 462 (D.C. Cir. 2012); *see Small Refiner*, 705 F.2d at 549.

specific "bright-line" approaches they chose. Opp. 7-8 (noting only that the record discusses adjacency in general). "While a 'bright line' test is not in itself arbitrary, the Rule['s specific choices] must be supported by some evidence." Doc. 70 (ND PI) at 13, No. 3:15-cv-00059 (D. N.D.). This complete lack of support is unsurprising given that the Corps itself argued to EPA that some of these five approaches "ha[ve] no basis in science or law, and thus [are] 'arbitrary.'"[4] Critically, while the Agencies note that the Rule "must stand or fall on the certified record" (Opp. 7), they have absolutely no answer for the States' argument that the lack of public notice as to these five approaches made it impossible for the States to build a record to contest the specific approaches chosen (Stay Mot. 9).

### C.    The WOTUS Rule Is Incompatible With *Rapanos* And *SWANCC*

Tributaries. As the Stay Motion noted (Stay Mot. 12), Justice Kennedy's *Rapanos* concurrence disparaged the plurality's test because that test permitted jurisdiction over waters sending only the "merest trickle[s]" into navigable waters. 547 U.S. at 769. The unmistakable implication is that Justice Kennedy's test does not cover such "mere[] trickle" waters. In response, the Agencies disagree that the Rule's tributary definition covers waters that send only the "merest trickle" into primary waters. Opp. 9. But the Rule provides that *any* water or sometimes wet

---

[4] Doc. 62-3 at 2, No. 2:15-cv-00079 (S.D. Ga.). These internal documents reflect, in the Agencies' words, a "robust" debate as to the five distance-based approaches in the final Rule. Opp. 7. The problem, under the APA, is that the "robust" debate took place entirely behind closed doors, without public input. Stay Mot. 9-10.

land that has a "physical indicator" of a bed, bank and OHWM is jurisdictional if it sends *any* amount of flow—*even a trickle*—into a traditional water. 33 C.F.R. § 328.3(c)(3); *accord* 80 Fed. Reg. at 37,076. The Rule thus exemplifies "the concern Justice Kennedy" expressed. ND PI, at 11.

"Adjacent" Waters. The Rule similarly violates Justice Kennedy's reasoning in defining "adjacent" waters. Justice Kennedy rejected a Corps *regulation* asserting jurisdiction over wetlands adjacent to "drains, ditches, and streams remote from any navigable-in-fact water and carrying only minor water volumes toward it." 547 U.S. at 781. The Agencies argue that Justice Kennedy permitted them to define categories of adjacent waters "through regulations." Opp. 9. But Justice Kennedy held that any regulations must be *narrower* than the Corps' regulation that he *rejected* as "preclude[d]" by the CWA. 547 U.S. at 781. The WOTUS Rule doubles down on the defect Justice Kennedy found fatal in the *Rapanos* regulation. Indeed, the Rule is more expansive than the regulation Justice Kennedy rejected, as it covers all "adjacent" waters, and not just wetlands, then broadly redefines "adjacency" to include, for example, non-adjacent waters within a 100-year floodplain and 1,500 feet of a "tributary." 33 C.F.R. § 328.3(c)(2).

Remarkably, the Agencies read *Rapanos* as permitting them to adopt a broader adjacency rule than the one Justice Kennedy rejected. The Agencies do not dispute that their own estimates show a 17.1% increase in per se CWA

5

jurisdiction over their "isolated waters category" of "intrastate, non-navigable waters," based largely upon the new adjacency category. *See* Stay Mot. 15.

Case-by-Case Waters. In *Rapanos*, Justice Kennedy explained that any regulation that swept in the "isolated ponds and mudflats" encompassed by the Migratory Bird Rule invalidated in *SWANCC* violated the CWA. 547 U.S. at 779. In their Stay Motion, the States argued that the Rule's rejection of Justice Kennedy's holistic inquiry into a water's impact means that the Rule covers not only the specific waters at issue in *SWANCC*, but numerous similarly isolated waters. For example, the States pointed out that the Rule's "dispersal" concept would almost certainly cover the waters encompassed by the Migratory Bird Rule. Stay Mot. 14. The Agencies offer no response. Instead, they merely note that the Rule did not specifically re-adopt the Migratory Bird Rule (Opp. 11), without disputing that the WOTUS Rule's approach to case-by-case waters swallows not only the *SWANCC* waters, but many other isolated waters.

**D.    The WOTUS Rule Violates The State's Constitutional Rights**

*SWANCC* rejected the Migratory Bird Rule because, *inter alia*, that rule's coverage intruded on the States' "traditional and primary power over land and water use." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173-74. Given that the Agencies cannot meaningfully dispute that

the WOTUS Rule covers more than the isolated waters at issue in *SWANCC*, it necessarily violates the States' constitutional rights. *See Id.*

## III.    The Rule Is Imposing Irreparable Harms Upon The States Every Day

Sovereignty Harms. In their Stay Motion, the States argued that the Rule deprives them of their sovereign rights over their own local waters, the same harm that was sufficient for preliminary relief in both *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001), and for this Rule in the District of North Dakota. Stay Mot. 16.  The Agencies' opposition offers no meaningful answer and fails to address either *Kansas* or the North Dakota decision.  Instead, the Agencies' only response is that "the CWA explicitly retains state authority to regulate intrastate waters *more stringently* than any federal requirements imposed under the CWA." Opp. 12 (emphasis added).  But the touchstone of the sovereign right at issue is the authority to protect intrastate waters *as the States so choose*, which includes the option of imposing regulations that are more *or* less stringent than the CWA requires.  *See SWANCC*, 531 U.S. at 174 (unlawful assertion of CWA authority invades States' "traditional and primary power over land and water use").

Unrecoverable Financial Harms. The Agencies also have no serious response to the States' showing that the Rule imposes unrecoverable financial harms on them.  The Agencies estimated that the Rule will impose costs of *more than a million dollars per year* upon the States under the Section 404 and NDPES

programs alone (Stay Mot. 18-19), which is more than sufficient for a stay.[5]  As the Agencies admit, implementation of the Rule in 37 States is proceeding apace, with the Agencies already receiving "hundreds" of permitting requests under the Rule (Opp. 20), necessitating "[c]alls, webinars, and meetings with States" (Moyer Decl. ¶11).  So while the Agencies attempt to back away from their own yearly cost estimates under the Section 404 and NDPES programs by speculating that the States will only receive "a handful" of application or certification requests per State (Opp. 17), this argument is belied by the Agencies' own account of the rapid new permitting activity taking place under the Rule.  *See* Opp. 20; Moyer Decl. ¶11.  This shows that the Agencies' prior estimates as to the volume of additional applications under the Rule were, if anything, a serious undercounting.

The Agencies' remaining arguments are similarly meritless.  The Agencies suggest that the States can pass Section 404 and NPDES permitting and certification costs onto their citizens (Opp. 17-18), but this is the "equivalent of having the Court order that the States (and their citizens) pay their own damages." *Texas v. United States*, No. B-14-254, 2015 WL 1540022, at *8 (S.D. Tex. Apr. 7, 2015); *accord Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015).  The

---

[5] The Agencies suggest that financial harms imposed by federal regulations are sometimes insufficient for a stay (Opp. 13), but ignore the States' caselaw holding that the federal government's sovereign immunity leads to irreparable financial harms (Stay Mot. 16-17).  That is especially true here, where the Agencies estimate that the Rule will impose entirely unrecoverable costs of over a million dollars per year upon the sovereign States, which will necessarily harm the States' citizens.

Agencies also assert that the States' Section 401 certifications under the Section 404 program, but not their duties under the NPDES program, can be "waive[d]." Opp. 17-18. "State certifications under [Section] 401 are essential in the scheme to preserve state authority to address the broad range of pollution," meaning that the Agencies urge the States to avoid financial harm by abandoning their sovereign rights. *S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*, 547 U.S. 370, 386 (2006).[6]

## IV.    The Equities And The Public Interest Strongly Favor A Stay

The Agencies' public interest arguments only reinforce the need for an immediate stay. The Agencies argue that the Rule will bring "predictability and consistency" (Opp. 19), but the opposite is currently true where, by the Agencies' own affirmative choice, the Rule is being enforced in 37 States. The farmers and homeowners in those States are being forced to make permitting decisions without knowing whether the Rule will survive judicial review. Stay Mot. 19-20. And the

---

[6] The Agencies also quibble with the States' declarations, as to the specific costs that the States will suffer under the WQS program. Opp. 14-15. Given the Agencies' own million dollar plus cost estimate as to the separate Section 404 and NPDES programs, as well as the States' largely undisputed sovereign harms, this Court need not decide the disputed WQS factual questions. In any event, several of EPA's factual assertions regarding the WQS program misstate the Rule's burden upon the States. To take just one example, EPA points out that a Use Attainability Analysis is "only required when a State wishes to designate a water for a use other than one of the minimum protective uses set forth in the CWA." Opp. 15. But since the Rule adds many new waters to federal jurisdiction, this leaves a State with two options: accept EPA's designations as to the water's permissible use and impairment status; or, expend State resources to make its own inquiry, under the costly Use Attainability Analysis process. *See* 40 CFR 131.10; 40 C.F.R. 130.7. The former path would surrender the State's sovereign rights under the CWA.

Agencies themselves are wasting significant public resources implementing in 37 States a rule that is unlikely to survive judicial review, including processing "hundreds of pending requests for jurisdictional determinations, individual permit applications, and general permit applications . . . under the new Rule." Opp. 20.

Finally, there is no merit to the Agencies' suggestion that the States delayed in seeking relief. Opp. 19. Most of the Petitioner States sought immediate preliminary relief in the forum that they believe has jurisdiction: the district courts (where the Agencies sought to slow proceedings). Thirteen States obtained such relief in the District of North Dakota before the Rule's effective date. The remaining States filed promptly in this Court, three business days after the North Dakota court clarified that its injunction did not apply nationwide, contrary to the States' reasonable expectations. *See Texas*, 787 F.3d at 768-69 (nationwide preliminary injunction of agency immigration rule, in lawsuit by 26 States).[7]

## CONCLUSION

The States respectfully request that the Court grant the motion for a stay.

---

[7] States supporting the Rule speculate that the Rule will protect them and the environment (Doc. 45, No. 15-3887 (6th Cir.)) but fail to explain which newly jurisdictional waters are not already adequately protected by State regulation and offer no evidence that their sister States' current regulations of intrastate waters are harming other States. In any event, these States offer no argument that imposing the Rule now would serve *any* useful purpose, if the Rule is likely to be vacated as illegal. The Natural Resources Defense Council, *et al.*, assert that the Rule protects drinking water from "public drinking-water systems" (Doc. 46 at 5, No. 15-3887 (6th Cir.)), ignoring that these systems are already protected by the federal Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.*

Respectfully Submitted,

**Case No. 15-3799**

*/s/ Daniel P. Bock*
BILL SCHUETTE
Michigan Attorney General

S. PETER MANNING
Division Chief
DANIEL P. BOCK
Assistant Attorney General
Environment, Natural Resources, and
Agriculture Division
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI 48909
517-373-7540; 517-373-1610 fax
manningp@michigan.gov

*Counsel for State of Michigan*

*/s/ Eric E. Murphy*
MICHAEL DEWINE
Attorney General of Ohio

ERIC E. MURPHY
State Solicitor
LEE ANN RABE
Assistant Attorney General
PETER T. REED
Deputy Solicitor
30 East Broad Street, 17th Floor
Columbus, OH 43215
614-466-8980; 614-466-5087 fax
eric.murphy@
  ohioattorneygeneral.gov

*Counsel for State of Ohio*

*/s/ Elizabeth P. McCarter*
HERBERT H. SLATERY III
Tennessee Attorney General and Reporter

BARRY TURNER
Deputy Attorney General
ELIZABETH P. McCARTER
Senior Counsel
Office of the Attorney General and Reporter
Environmental Division
P.O. Box 20207
Nashville, Tennessee 37202
615-532-2582; 615-741-8724 fax
lisa.mccarter@ag.tn.gov

*Counsel for State of Tennessee*

11

**<u>Case No. 15-3822</u>**

*/s/ P. Clayton Eubanks*
P. CLAYTON EUBANKS
Deputy Solicitor General
SARAH A. GREENWALT,
Assistant Solicitor General
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 522-8992; (405) 522-0608 fax
Clayton.Eubanks@oag.ok.gov
Sarah.Greenwalt@oag.ok.gov

*Counsel for State of Oklahoma*

**Case No. 15-3853**

/s/ Megan K. Terrell
JAMES D. "BUDDY" CALDWELL
Attorney General of Louisiana
TREY PHILIPS
First Assistant Attorney General
MEGAN K. TERRELL
Deputy Director – Civil Division
Chief – Environmental Section
Assistant Attorney General
Office of the Louisiana Attorney
General
1885 N. Third Street
Baton Rouge, Louisiana 70802
Tel:  (225) 326-6020
Fax: (225) 326-6099

*Counsel for State of Louisiana*

/s/ Mary Jo Woods
JIM HOOD
Attorney General of the State of
Mississippi
MARY JO WOODS
Special Assistant Attorney General
Mississippi Attorney General's
Office
Post Office Box 220
Jackson, Mississippi  39205
mwood@ago.state.ms.us
Tel:  (601) 359-3020
Fax: (601) 359-2003

*Counsel for State of Mississippi*

/s/ Matthew B. Miller
KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General
BERNARD L. McNAMEE
Chief of Staff
SCOTT A. KELLER
Solicitor General
JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation
JON NIERMANN
Chief, Environmental Protection Division
MATTHEW B. MILLER
Assistant Attorney General
Texas Bar No. 24074722
matt.miller@texasattorneygeneral.gov
Southern District Bar No. 2638649
LINDA B. SECORD
Assistant Attorney General
Texas Bar No. 17973400
linda.secord@texasattorneygeneral.gov
Southern District Bar No. 1850549
Office of the Attorney General of Texas
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel.  (512) 463-2012
Fax. (512) 320-0911

*Counsel for State of Texas*

13

**Case No. 15-3887**

/s/ Britt C. Grant
Samuel S. Olens
  *Attorney General*
Britt C. Grant
  *Solicitor General*
Timothy A. Butler
  *Deputy Solicitor General*
James D. Coots
  *Sr. Asst. Attorney General*
OFFICE OF THE ATTORNEY GENERAL
40 Capitol Square, S.W.
Atlanta, Georgia 30334
bgrant@law.ga.gov
(404) 651-9453
  *Counsel for State of Georgia*

/s/ Elbert Lin
Patrick Morrisey
  *Attorney General*
Elbert Lin
  *Solicitor General*
Misha Tseytlin
  *General Counsel*
Erica N. Peterson
  *Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
State Capitol
Building 1, Rm 26-E
Charleston, West Virginia 25305
Elbert.Lin@wvago.gov
(304) 558-2021
  *Counsel for State of West Virginia*

/s/ Andrew Brasher
Luther Strange
  *Attorney General*
Andrew Brasher
  *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, Alabama 36130
abrasher@ago.state.al.us
(334) 353-2609
  *Counsel for State of Alabama*

/s/ Allen Winsor
Pamela Jo Bondi
  *Attorney General*
Allen Winsor
  *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Allen.winsor@myfloridalegal.com
(850) 414-3300
  *Counsel for State of Florida*

/s/ Thomas M. Fisher
Gregory F. Zoeller
  *Attorney General*
Thomas M. Fisher
  *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
302 West Washington Street

/s/ Sam M. Hayes
Sam M. Hayes
  *General Counsel*
Craig A. Bromby
  *Deputy General Counsel*
Andrew J. Norton
  *Deputy General Counsel*

14

Indiana Government Center - South,
Fifth Floor
Indianapolis, Indiana 46204
(317) 232-6255
Tom.Fisher@atg.in.gov
  *Counsel for State of Indiana*

NORTH CAROLINA DEPARTMENT OF
  ENVIRONMENT AND NATURAL RESOURCES
215 W. Jones Street
Raleigh, North Carolina 27603
sam.hayes@ncdenr.gov
craig.bromby@ncdenr.gov
andrew.norton@ncdenr.gov
(919) 707-8600
  *Counsel for Petitioner North Carolina
  Department Of Environment and Natural
  Resources*


*/s/ Jeffrey A. Chanay*
Derek Schmidt
  *Attorney General*
Jeffrey A. Chanay
  *Chief Deputy Attorney General*
Burke W. Griggs
  *Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
120 SW 10th Ave., 3d Floor
Topeka, Kansas 66612
jeff.chanay@ag.ks.gov
burke.griggs@ag.ks.gov
(785) 368-8435
  *Counsel for State of Kansas*

*/s/ James Emory Smith*
Alan Wilson
  *Attorney General*
Robert D. Cook
  *Solicitor General*
James Emory Smith, Jr.
  *Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
1000 Assembly Street, Room 519
Columbia, South Carolina 29201
bcook@scag.gov
(803) 734-3680
  *Counsel for State of South Carolina*


*/s/ Sean J. Riley*
Jack Conway
  *Attorney General*
Sean J. Riley
  *Chief Deputy Attorney General*
OFFICE OF THE ATTORNEY GENERAL
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601
sean.riley@ag.ky.gov
(502) 696-5650
  *Counsel for State of Kentucky*

*/s/ Parker Douglas*
Sean D. Reyes
  *Attorney General*
Parker Douglas
  *Chief of Staff & Federal Solicitor*
OFFICE OF THE UTAH ATTORNEY GENERAL
Utah State Capitol Complex
350 North State Street, Suite 230
Salt Lake City, Utah 84114-2320
pdouglas@utah.gov
(801) 538-9600
  *Counsel for State of Utah*

*/s/ Karla Z. Keckhaver*
 Brad D. Schimel
   *Attorney General*
Karla Z. Keckhaver
   *Assistant Attorney General*
WISCONSIN DEPARTMENT OF JUSTICE
17 West Main Street
Madison, Wisconsin 53707
keckhaverkz@doj.state.wi.us
(608) 264-6365
   *Counsel for State of Wisconsin*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2015, I caused the foregoing Reply In Support of Motion For A Stay Pending Review to be served via the Court's CM/ECF system on all registered counsel.

**No. 15-3822**

*/s/ P. Clayton Eubanks*
P. CLAYTON EUBANKS
Counsel for State of Oklahoma

**No. 15-3799**

*/s/ Eric E. Murphy*
ERIC E. MURPHY
Counsel for State of Ohio

**No. 15-3853**

*/s/ Matthew B. Miller*
MATTHEW B. MILLER
Counsel for State of Texas

**No. 15-3887**

*/s/ Elbert Lin*
ELBERT LIN
Counsel for State of West Virginia